O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | | |

**Proceedings:**       IN CHAMBERS (No Proceedings Held)

## I.     INTRODUCTION

On July 31, 2007, Beverly Gregg ("Plaintiff") filed her Complaint against United Healthcare Insurance Company ("United") and the Raytheon Medical Plan ("Raytheon"). Plaintiff alleges that Defendants improperly denied insurance policy benefits in violation of the Employee Retirement Income Security Act ("ERISA"). On April 21, 2008, Plaintiff filed this Motion Re: Standard of Review, seeking an order as to the proper standard of review of the denial of coverage. On May 5, 2008, United filed its Opposition to the motion. On Plaintiff's request, the Court delayed its ruling until the Supreme Court's decision in *Metro. Life Ins. Co., et al. v. Glenn,* 128 S. Ct. 2343, (2008), which was issued on June 19, 2008.

For the reasons stated below, the Court HOLDS that the standard of review of the claim administrator's decision shall be abuse of discretion.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Claim for Benefits

Plaintiff was an employee of Raytheon Space and Airborne Systems and obtained health coverage through the Raytheon Medical Plan. The coverage Gregg purchased was the "Choice Plus PPO" ("the Plan") offered by United.[1]

---

[1] The administrative record does not specify the date when Plaintiff purchased the policy.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

After the inception of the policy[2], Gregg developed lower back problems. Gregg attempted conservative treatment, undergoing three procedures beginning November 1999, culminating in spinal surgery in April 2003, by her doctor, John Regan. (Compl. Ex. 3.) When these procedures did not alleviate the pain, Dr. Regan suggested that she undergo the Charite artificial disc replacement, a procedure which had not yet been approved by the Food and Drug Administration ("FDA"). (Mem. at 4.) The FDA approved the device in October 2004. Around that same time, Dr. Regan ordered an MRI on Plaintiff's spine, which showed significant abnormality.

On or about July 21, 2006, a representative from Dr. Regan's office sought pre-surgical approval for Gregg for coverage of the artificial disc replacement from Defendant. Plaintiff and United have a significant dispute as to what transpired during that communication. Plaintiff asserts that United provided Dr. Regan's office with pre-authorization for the artificial disc replacement. (Mem. at 5.) Plaintiff argues that United provided Dr. Regan's office with "certification number" 2211302119, indicating that the surgery had been approved. (Mem. at 5.)

However, United contends that it never authorized the surgery and did not make a determination of coverage at that time. (AR0087.) The only documentation of activity from the period July 21, 2006 to August 15, 2006 appears in a series of printouts from United's claim file for Plaintiff, a file that logs all events for the patient's account. (AR0087.) The printouts indicate an expected surgery and hospitalization on August 15, 2006. The hospitalization corresponds to "Serv Ref Nbr" 3211302119 and the surgery corresponds to "Serv Ref Nbr" 2211302119. (AR0087.) For July 21, 2006, the printout indicates "Member Demographics Confirmed" and "Intake Completed." On July 26, 2006, the printout indicates "Member Eligibility Confirmed." On August 1, 2006, United entered notes in the file indicating that the procedure "is unproven for treatment due to inadequate clinical evidence of safety and/or efficacy in published, peer-reviewed medical literature" and that the claim was referred "to MD for review." (AR0090.)

---

[2]Again, there is no record of the date that Plaintiff's policy became effective. In Exhibit 3 of the Complaint Gregg states that in November 1999, she underwent therapy for her back problems, which she says began after the policy began. However, Raytheon and United entered into their Agreement in December 2001.

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

On August 1, 2006, believing that authorization had been given, Dr. Regan performed the artificial disc replacement procedure on Plaintiff. (Mem. at 5; Compl. Exhibit 3; AR005).

On August 14, 2006, United's doctor, William Weese, entered notes based on his review, stating: "The clinical evidence in peer-reviewed scientific literature is insufficient to document the efficacy and safety of the artificial disc. As such, it is an unproven service under the plan and is excluded from coverage." (AR0091.)

On or about August 15, 2006, United called Dr. Regan to report that the surgery was not covered because it was excluded under the Plan's "Experimental, Investigational, or Unproven Services." (AR0091-92.) In addition, United sent a letter to Dr. Regan containing both the information from the August 15 telephone call as well as information on how to appeal the denial. (Mem. at 6; Opp'n at 4, AR0087, 91-92.)

Plaintiff appealed on September 7, 2006. For this first level appeal, United asked orthopedic surgeon Dr. Louis Huesmann to review Plaintiff's file. (AR0096-99.) Dr. Huesmann spoke with Dr. Regan, who said there was a longer study on the Charite disk and that he was a key investigator in the research and that the study has been submitted to a peer-reviewed journal for publication. (AR0098.) However, Dr. Regan did not tell Dr. Huesmann the name of the journal or the timing of publication. (*Id.*) Dr. Huesmann concluded that until Dr. Regan's paper is published, the clinical evidence was inadequate to determine the long term treatment effects of the artificial disc replacement. (AR0099.) On October 25, 2006, United sent Plaintiff a letter upholding its decision to deny her claim. (AR0112.)

On December 4, 2006, Plaintiff appealed the decision for a second time. (Compl., Ex. 5.) Included in the appeal documents was a letter from Dr. Regan requesting review by an independent physician who was a spinal specialist familiar with the artificial disc replacement. (Compl., Ex. 6.) On January 5, 2007, Dr. Gerald Broock, another orthopedic surgeon selected by United, reviewed Plaintiff's claim and spoke with Dr. Regan. (AR0122) Dr. Regan conceded that there were no long-term studies as to the safety and efficacy of the artificial disc replacement. (*Id.*) Dr. Regan offered the unpublished study he had previously offered but could offer no published study to support his claims. (AR0123.) Dr. Broock reviewed all of the available published

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

studies and concluded that there was not enough evidence to show that the procedure was safe and/or effective for the Plaintiff. (AR0125-135.) In addition, Dr. Broock concluded that Plaintiff's condition did not warrant the procedure. (AR0141-0144.)

On January 10, 2007, Defendant sent Plaintiff a letter upholding the denial of coverage for the second time.

### B. Administrative Services Agreement Between United Healthcare and the Raytheon Medical Plan

On December 4, 2001, United and Raytheon entered into an Administrative Services Agreement ("ASO"). The ASO describes the relationship between the two entities and applies that relationship to the Plan. (ASO005.) Under the ASO, United is the claim administrator and agrees to provide Claims Administration Services and Benefit Appeals Services. (ASO014, 018.) United "determine[s] whether a benefit is payable under the Plan for claims submitted. . .by Plan Participants or the health care provider" according to United's claim and appeal procedures. (*Id.*)

The ASO's provisions governing funding of benefits state that the Plan is self-funded by Raytheon. (ASO015.) Raytheon opens and maintains a bank account at the bank used by United for its self-funded customers, giving United access to the funds for payment of benefits. (ASO015.) Raytheon maintains control over the funds. (ASO015.) If the agreement were to terminate, Raytheon would recover all funds left in the account. (ASO017.)

## III. ANALYSIS

### A. The Plan Confers Discretion on the Administrator

The Ninth Circuit has held that a denial of benefits should be reviewed *de novo* when a plan does not confer discretion on the administrator to construe the terms of the plan and determine eligibility for benefits. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, "if the plan does confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

*Abatie*, 458 F.3d at 963 (citing *Firestone*, 489 U.S. at 115). The grant of discretionary authority must be unambiguous. *Abatie*, 458 F.3d at 963 (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999), *cert. denied*, 528 U.S. 964 (1999).

"There are no 'magic' words that conjure up discretion on the part of the plan administrator." *Abatie*, 458 F.3d at 963 (citing *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000)). A plan grants discretion if the administrator has the power to interpret and construe plan terms and make final determinations. *Abatie*, 458 F.3d at 963. *Abatie* cites a number of Ninth Circuit and other appellate decisions which found that plans conferred discretion when they granted the administrator the power to "interpret" and to "construe" the terms as well as the power to "determine" or make "final decisions" conferred discretion on the plan administrator. *Id.* (citing cases from the First, Third, Fifth, Sixth, and Ninth Circuits). *Abatie* agreed with the cited cases, but emphasized that it was not sufficient for the plan to use the word "discretion" in some form but that the plan must grant power to *construe* or *interpret* the terms..

Under the *Abatie* standard, the benefits handbook for the Plan that Plaintiff received unambiguously confers discretionary authority on United to determine payment of claims. The handbook states:

> *Each claims administrator has the authority to make final decisions with respect to paying claims.* The plan administrator is responsible for making final decisions with respect to all other issues that may arise under the plans. For some plans, the claims administrator and the plan administrator are the same.
>
> In making a final decision, the applicable claims administrator and the plan administrator have *full discretionary power to interpret the meaning of plan provisions and determine all questions arising under a plan*, including, but not limited to, eligibility for benefits.

(UHC348, emphasis added.) Although United is called the "claims administrator," for the purposes of determining the standard of review of denial of claims, United is the "plan administrator" because it has the authority to make final decisions with respect to payment of claims. The language of the Plan meets the standard articulated in *Abatie* for

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

plans that confer discretion on plan administrators. The Plan gives the claims administrator full discretionary power to interpret the meaning of plan provisions and the ability to make final decisions. Based on the Plan language, therefore, the standard of review is abuse of discretion.

### B. There is No Reason to Deviate from the Abuse of Discretion Standard

<u>1. Effect of conflict of interest on standard of review.</u>

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court suggested that a conflict of interest exists when a plan administrator (which acts as a fiduciary toward the plan participants, who are beneficiaries) is also the sole source of funding for an unfunded plan. Based on *Firestone*, the Ninth Circuit held that where an entity both evaluates claims for benefits and funds those benefits, there is a structural conflict of interest because the administrator both has the responsibility for giving benefits to those who deserve them, and the incentive to pay as little as possible in order to retain the money itself. *Abatie*, 458 F.3d at 966. To determine the extent and weight of any conflict of interest, the deciding court may consider facts outside of the administrative record, but any decision on the merits must be based only on the record. *See id.* at 970.

*Metro. Life. Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008) set no new standard for evaluating conflicts of interest. *See Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, --- F.3d ---, 208 WL 4276910, *7 (9th Cir. Sept. 19, 2008) (noting that *Glenn* adopted a framework similar to similar to the one in *Abatie*). The Supreme Court affirmed its statement in *Firestone* that conflict of interest is one of many factors to consider. *Id.* at 2350-51. The *Glenn* Court refused to overturn *Firestone* and replace it with a rule requiring *de novo* review whenever there was a conflict of interest. *Id.* at 2350. The Court also declined to establish a specific process for considering conflicts of interest, stating that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id.* Rather, conflict of interest is one of many case-specific factors that courts consider in reviewing the lawfulness of benefit denials and may weigh more or less heavily depending on the circumstances surrounding the conflict. *Id.* *Glenn* is therefore consistent with the Ninth Circuit's case-by-case, combination-of-factors

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

approach in *Abatie*, 458 F.3d at 968 (holding that weighing both structural and other types of conflicts of interest as factors required case-by-case balancing and explaining that "an egregious conflict may weigh more heavily . . . than a minor, technical conflict . . .").

In this case, there is no apparent structural conflict of interest. Plaintiff merely asserts that United's actions, such as its reliance on its own medical experts and its decision to deny benefits, indicate a structural conflict. That circular argument ignores the case law defining such conflicts of interest. The Administrative Services Agreement clearly indicates the separation of the two entities: United is responsible for administering the claims, including approving or denying benefits, and Raytheon is responsible for paying the approved claims. (UHC348.) This is confirmed by the fact that Raytheon maintains control of the funds in the bank account and has no ability to assert power in claims determinations. (ASO015.) Under this contractual arrangement, United has no direct economic interest in whether the claims are approved or denied. The allocation of roles between United and Raytheon, therefore, sets this case apart from *Firestone*, *Glenn*, and *Burke*, which dealt with entities that both funded and administered plans. *Glenn*, 128 S.Ct. at 2346 (MetLife served as both administrator with discretionary authority to determine claims and payor of claims); *Firestone*, 489 U.S. at 115; *Burke*, 2008 WL 4276910, *8.

This case is nearly identical to two recent district court cases from the Eastern District of California where the court held there was no conflict of interest. In both *Riffey v. Hewlett-Packard Co. Disability Plan*, 2007 WL 946200 (E.D. Cal. 2007) and *LaMantia v. Hewlett Packard Co. Employee Benefits Organization Income Protection Plan*, 2007 WL 496341 (E.D. Cal. 2007), plaintiffs sought to recover benefits under a self-funded plan sponsored by Hewlett-Packard (HP) and administered by Voluntary Plan Administrators, Inc. (VPA), which acted as claim administrator pursuant to an administrative services contract. HP's Plan provided that the claims administrator, VPA, "shall have the discretionary power to construe the language of the Plan and make the decision on review on behalf of [HP]." *Riffey*, 2007 WL 946200 * 2. In *Riffey*, the court held that VPA was not acting under a conflict of interest because VPA had no economic interest in the outcome of claims, and the conflict in *Abatie* referred to a situation where a single entity both funds and administers the plan. 2007 WL 946200 at *11. The court specifically refused to find that VPA had a conflict of interest through its relationship

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

with HP where VPA had no direct financial incentive to deny claims (although it might have had an indirect incentive). *Id.* Like the plans in those cases, Raytheon's plan is self-funded and, like the employer in those cases, Raytheon granted full discretionary power to a separate company to make final decisions on the claims. *Riffey*, 2007 WL 946200 at *1; *LaMantia*, 2007 WL 496341at *1.

Plaintiff offers no evidence that United had a conflict of interest in the determination of her claim. Moreover, even if there were a structural conflict, *Glenn* instructs that the abuse of discretion standard of review would still apply. *Glenn*, 128 S.Ct. at 2349-50. However, the reviewing court must analyze the conflict along with all the factors relevant to the lawfulness of United's denial of coverage, within the overall analysis of whether the administrator abused its discretion. *Id.* at 2350-51.

### 2. Effect of procedural violations on standard of review.

Independent from any conflict of interest, the standard of review may be heightened, even up to the point of *de novo* review, where "an administrator engages in *wholesale and flagrant* violations of the procedural violations of ERISA." *Abatie*, 458 F.3d at 971 (emphasis added). Under ERISA, administrators must follow certain practices in processing and deciding claims. *Id.* Failure to comply with procedures does not usually justify *de novo* review. *Id.* However, this does not mean procedural irregularities are irrelevant. *Id.* at 972. When an irregularity exists, the court should weigh it in determining whether the administrator abused its discretion. *Id.* In order to determine the extent of the violation, the court may consider evidence outside of the record. *Id.* If "wholesale and flagrant" violations exist, less deference is warranted. *Id.* at 971. If the administrator's actions "fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted." *Id.* at 972.

Plaintiff makes two assertions that apparently are meant to demonstrate procedural violations of ERISA. She first contends that United approved the procedure, only to subsequently, and improperly, deny coverage. The case file indicates that intake was completed on July 21, 2006 and member eligibility was confirmed on July 26, 2006. (AR0087.) The file does not state that approval was given. Nor is there any basis for the Court to conclude that "ServRefNbr" is a "certification" number, as Plaintiff asserts.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

Plaintiff does not argue that "Member Eligibility Confirmed" constitutes a pre-authorization and United does not explain what that particular line item means. From United's file, there is simply no evidence that United made a *determination* on her claim until August 14, 2006, the day before her scheduled (but not actual) surgery. Although Plaintiff and her doctor claim to have relied on pre-authorization from United, they neither cite the file nor other evidence of pre-authorization.

     Second, Plaintiff contends that United "cherry-picked" the evidence and that its decision was based on "nothing." She cites *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) for the principle that an administrator may not arbitrarily refuse to credit the evidence of a treating physician. 538 U.S. at 834. Here, United did not arbitrarily ignore Dr. Regan's evidence. Rather, United's doctors considered Dr. Regan's opinion, which was based on a single unpublished study in which he participated, but concluded that the procedure was unproven based on the history of the procedure and lack of peer-reviewed literature supporting it. Moreover, *Nord* also held that courts may not force plan administrators to give more weight to treating physicians' opinions than to their own physicians. Thus, the fact that Defendant relied more heavily on the opinions of its own physicians is not a procedural violation warranting less deferential review. Plaintiff's accusation of cherry-picking reflects her disagreement with United on the merits of her claim, not United's procedures.

     For these reasons, the Court finds that United did not violate ERISA-mandated procedures in a "wholesale and flagrant" manner. *Abatie*, 458 F.3d at 971. Therefore, the appropriate standard of review remains abuse of discretion.

//
//
//
//
//
//
//
//
//
//
//

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-4908 AHM (VBKx) | Date | October 21, 2008 |
|---|---|---|---|
| Title | BEVERLY GREGG v. UNITED HEALTHCARE INSURANCE COMPANY, *et al.* | | |

//

## IV. CONCLUSION

For the reasons stated below, the Court HOLDS that the standard of review of the claim administrator's decision shall be abuse of discretion. The Court ORDERS the parties to meet and confer regarding a briefing schedule and to file a stipulation by November 3, 2008.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

:  

Initials of Preparer    SMO